IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISON A. MCCOY-JONES,<br>        Plaintiff,<br><br>v.<br><br>INDIANA BOROUGH, INDIANA<br>BOROUGH POLICE DEPARTMENT,<br>OFFICER MICHAEL RHOADES, CHIEF<br>WILLIAM C. SUTTON, OFFICER WESLEY<br>HITE, and MICHAEL ZINER t/d/b/a<br>IMPORT AUTO WORKS,<br>        Defendants. | Civil Action No. 12-152 |

**<u>MEMORANDUM ORDER</u>**

Presently pending before this Court is Defendants Indiana Borough, Officer Michael Rhoades, Chief William Sutton and Officer Wesley Hite's Motion to Dismiss (Docket No. 6) Plaintiff Allison McCoy-Jones' Complaint (Docket No. 1). The Motion has been fully briefed (Docket Nos. 7, 23, 24, 26, 28) and the Court heard Oral Argument on April 26, 2012 (Docket No. 27). During the April 26, 2012 Oral Argument, the Court denied the Motion and now sets forth in further detail its rationale.

I.      Factual and Procedural Background[1]

This is a Section 1983 action for alleged violations of Plaintiff's Fourth, Ninth and Fourteenth Amendment rights, conspiracy to violate her civil rights, intentional infliction of emotional distress, malicious prosecution and defamation. (Docket No. 1 at 16-24). Plaintiff seeks compensatory and punitive damages. *Id*.

---

[1] In evaluating a Motion to Dismiss, this Court must accept the allegations as true and construe them in favor of the Plaintiff. *Birdman v. Office of the Govenor,* Nos. 10–4189, 11–1462, 2012 WL 1216812 (3d. Cir. Apr. 12, 2012).

Plaintiff is the owner of a 2003 Nissan Murano automobile. *Id*. at ¶ 11. The car had a history of various problems and had been serviced by a Nissan dealership and by Defendant Michael Ziner (hereinafter "Ziner"), a mechanic who operates "Import Auto Works". *Id*. at ¶¶ 11-14. On March 2, 2010, the car suffered a mechanical problem and Plaintiff requested that Ziner pick up the car and diagnose the problem. *Id*. at ¶¶ 15-16. Ziner determined that the transmission failed and that repair costs would total $7,000.00 to $8,500.00. *Id*. at ¶ 16. Frustrated with the car's repair history, Plaintiff asked Ziner to call Nissan to determine whether the transmission was covered under a Nissan recall program, as Plaintiff did not want to invest any more money in the car. *Id*. As Plaintiff's car had been in a 2008 car accident, which may have contributed to the transmission problem, Ziner also advised Plaintiff that he would call the insurance carrier (Penn National Insurance) of the driver who was at fault for the 2008 accident. *Id*. Over the next several weeks, Plaintiff and Ziner pursued various methods through which the repairs might be covered by either a Nissan warranty or the insurance coverage applicable to the 2008 accident. *Id.* at ¶¶ 17-18. Neither Nissan nor any auto insurance carrier would agree to pay for the repairs. *Id*. Accordingly, Plaintiff appealed the insurer's denial to the Pennsylvania Insurance Commission and informed Ziner that he was not to repair the car unless the repair costs were to be covered by a third-party. *Id*.

On March 26, 2010, Ziner informed Plaintiff that her car had been repaired, stating that he had "found a cheaper way to get it on the road." *Id.* at ¶ 19. Per Ziner's permission and instruction, Plaintiff retrieved her car from his lot on March 27, 2010, with the mutual understanding that they "would square up the paperwork" on March 29, 2010. *Id*. However, after Plaintiff retrieved her car, a dispute ensued between her and Ziner regarding his $3,600.00 bill. *Id.* at ¶¶ 20, 23. In turn, Plaintiff offered to pay Ziner $2,800.00 for the parts he installed,

but he rejected her offer. *Id.* at ¶ 24.  Plaintiff then invited Ziner to sue her for payment, which he declined. *Id.* at ¶¶ 24, 30.  After August 2010, Plaintiff and Ziner had no further contact.  *Id.* at ¶ 30.

Nearly ten months after Plaintiff retrieved her car from Ziner, on January 24, 2011, Plaintiff received a call from Defendant Officer Rhoades (hereinafter "Rhoades") of the Indiana Borough Police Department. *Id.* at ¶ 31.  Rhoades informed her that Ziner had filed a criminal complaint against her for her alleged failure to pay for the repairs. *Id.*.  Plaintiff advised Rhoades about the history of the car's repairs and the monetary dispute which she had had with Ziner. *Id*.  Rhoades requested that she meet with him to discuss the matter and the next day, January 25, 2011, Plaintiff met with Rhoades.  *Id.* at ¶¶ 31, 32.  Rhoades again asked her what happened and she told him about the monetary dispute. *Id*.  She informed Rhoades that Ziner stated that an insurance carrier was going to pay for the repairs and that was why Ziner released the car to her. *Id*.  Rhoades acknowledged that Ziner had released the car to Plaintiff. *Id*.  He then asked if she had ever received payment from an insurance carrier and/or Nissan for any of the work.  *Id*.  Plaintiff stated that she had not, but if she had received any remuneration, it would have been given to Ziner. *Id*.  Rhoades advised Plaintiff that Ziner would need to sue Plaintiff and then Plaintiff would have to sue the insurance carrier, resulting in an expensive and time-consuming process.  *Id*.  Plaintiff then told him that she had offered to pay Ziner for the cost of the parts, but that Ziner had declined her offer. *Id.*

Thereafter, on January 31, 2011, Rhoades called Plaintiff and informed her that she had one week to pay Ziner in full or she would be arrested for theft of services. *Id.* at ¶ 33.  He futher told her that she was not permitted to contact Ziner and that no one else could contact Ziner on her behalf, or she would be arrested for harassment. *Id*.  Subsequently, on February 7, 2011,

Rhoades called Plaintiff and stated that because she had not paid Ziner, she was going to be arrested. *Id*. at ¶ 35. Plaintiff agreed to meet Rhoades at Magistrate Habrel's office the next day, February 8, 2011, at which time she was arrested and charged with Theft of Services, 18 Pa.C.S. § 3926[2] and Fraudulent Removal of a Vehicle from a Garage, 75 Pa.C.S. § 7116[3], which are both third degree felonies. *Id*. Plaintiff was charged with unlawfully removing her car from Ziner's lot even though the Affidavit of Probable Cause signed by Rhoades stated that Ziner had released the car to Plaintiff. *Id.* at ¶ 37. Moreover, the Affidavit of Probable Cause stated that Ziner had retained a key to Plaintiff's car, thus implying that she had not been authorized to retrieve her car. *Id*. Plaintiff asserts that said allegation in the Affidavit of Probable Cause was absolutely

---

[2] 18 Pa. C.S. § 3926 provides that:

> (1) A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by deception or threat, by altering or tampering with the public utility meter or measuring device by which such services are delivered or by causing or permitting such altering or tampering, by making or maintaining any unauthorized connection, whether physically, electrically or inductively, to a distribution or transmission line, by attaching or maintaining the attachment of any unauthorized device to any cable, wire or other component of an electric, telephone or cable television system or to a television receiving set connected to a cable television system, by making or maintaining any unauthorized modification or alteration to any device installed by a cable television system, or by false token or other trick or artifice to avoid payment for the service.
> (1.1) A person is guilty of theft if he intentionally obtains or attempts to obtain telecommunication service by the use of an unlawful telecommunication device or without the consent of the telecommunication service provider.
> (2) Deleted.
> (3) A person is not guilty of theft of cable television service under this section who subscribes to and receives service through an authorized connection of a television receiving set at his dwelling and, within his dwelling, makes an unauthorized connection of an additional television receiving set or sets or audio system which receives only basic cable television service obtained through such authorized connection.
> (4) Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, refusal to pay or absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

18 Pa.C.S.A. § 3926

[3] 75 Pa. C.S. § 7116 provides that "no person shall remove or cause to be removed, by any false pretension or with intent to defraud, any vehicle that has been placed in a garage or automobile shop for storage, repair or garage service." 75 Pa. C.S. § 7116.

4

false because Ziner placed the keys that Plaintiff had given him under the floor mat of her car so that Plaintiff would have all of her keys when she retrieved her car. *Id*. Thus, Plaintiff maintains that Rhoades and the Indiana Borough Police Department knew that Ziner had not retained any key. *Id*. at ¶ 45.

At the time and place set for Plaintiff's Preliminary Hearing, on April 18, 2011, the Magistrate refused to hold the hearing because in his estimation the dispute was a civil matter. *Id.* at ¶ 42. The Magistrate then directed the parties to settle the matter civilly. *Id*. Plaintiff agreed to pay $3,000.00 to Ziner and he accepted. *Id*. The charges against Plaintiff were dismissed in late July 2011 and she obtained expungement of the charges pursuant to Pennsylvania Rule of Criminal Procedure 586[4] on December 20, 2011. *Id.* at ¶ 43.

Plaintiff filed her Complaint in this Court on February 8, 2012 (Docket No. 1) and on March 29, 2012, Defendants Indiana Borough, Officer Michael Rhoades, Chief William Sutton and Officer Wesley Hite filed their Motion to Dismiss (Docket No. 6). Said Motion has been fully briefed (Docket Nos. 7, 23, 24, 26, 28). The Court heard Oral Argument on April 26, 2012. (Docket No. 27). During the course of the Oral Argument, Plaintiff's counsel conceded that Indiana Borough Police Department should be removed as a defendant. *Id.* Also, Defense counsel withdrew his argument relating to spoliation, but reserved his right to reassert that argument at a later time. *Id.* At the conclusion of the Oral Argument, the Court denied

---

[4] Pennsylvania Rule of Criminal Procedure 586 provides that:

> When a defendant is charged with an offense which is not alleged to have been committed by force or violence or threat thereof, the court may order the case to be dismissed upon motion and a showing that:
> (1) the public interest will not be adversely affected; and
> (2) the attorney for the Commonwealth consents to the dismissal; and
> (3) satisfaction has been made to the aggrieved person or there is an agreement that satisfaction will be made to the aggrieved person; and
> (4) there is an agreement as to who shall pay the costs.

Pa.R.Crim.P. 586.

Defendants' Motion to Dismiss (Docket No. 6). *Id.* The Court now turns to a discussion outlining the reasons for its decision.

II.     Legal Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint filed by a plaintiff. The United States Supreme Court has held that "[a] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555(207) (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). The Court must accept as true all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. However, as the Supreme Court made clear in *Twombly,* the "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Thus, after *Iqbal,* a district court must conduct a two-part analysis when presented with a motion to dismiss for failure to state a claim. *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d. Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id.* Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id.* at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. In other words, a complaint must do more than allege the plaintiff's entitlement

to relief. A complaint has to show such an entitlement with its facts." *Id.* at 211 (citing *Iqbal,* 129 S.Ct. at 1949). The determination for "plausibility" will be "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal,* 129 S.Ct. at 1950).

As a result, "pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." *Id.* at 211. That is, "all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible. This then allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal,* 129 S.Ct. at 1948).  However, nothing in *Twombly* or *Iqbal* changed the other pleading standards for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and the requirements of Fed.R.Civ.P. 8 must still be met. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d. Cir. 2008).  Federal Rule of Civil Procedure 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly,* 550 U.S. at 555 n. 3.  Additionally, the Supreme Court did not abolish the Fed.R.Civ.P. 12(b)(6) requirement that "the facts must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on those merits." *Phillips,* 515 F.3d at 231 (citing *Twombly,* 550 U.S. at 553).

III.   Discussion:

As noted, Plaintiff's counsel has acknowledged that Indiana Borough Police Department should be removed as a defendant. (Docket No. 27). Also, Defense counsel withdrew his argument relating to spoliation, but reserved his right to reassert that argument at a later time. *Id*. Moreover, both counsel and the Court agreed that the central issue in determining the Motion to Dismiss (Docket No. 6) is whether the Defendants had probable cause to arrest Plaintiff. For that reason, the Court will focus its discussion on the issue of probable cause.

In this case, Plaintiff has brought claims of malicious prosecution and false arrest against the Defendants. To state a claim for Fourth Amendment malicious prosecution in a §1983 action, Plaintiff must prove that:

> (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005). Likewise, to prevail on her false arrest claim, Plaintiff must demonstrate at trial that the arresting officer lacked probable cause to arrest her. "The proper inquiry in a section 1983 claim based on false arrest ... is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir.1988); *see also Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995).

> Probable cause "requires more than mere suspicion [.]" *Orsatti,* 71 F.3d at 482. However, it does not "require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams,* 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Rather, "probable

> cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti,* 71 F.3d at 483; *see also Wilson v. Russo,* 212 F.3d 781, 789 (3d Cir.2000) ("Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." (citation omitted).). "Probable cause need only exist as to [one of the] offense[s] that could be charged under the circumstances." *Barna v. City of Perth Amboy,* 42 F.3d 809, 819 (3d Cir.1994). In analyzing whether probable cause existed for an arrest, we must take a "totality-of-the-circumstances approach." *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

*Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010). The question of whether probable cause exists in a Section 1983 action is left to the jury to decide. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000).

Here, Plaintiff has filed a Complaint that is factually, very detailed. (*see* Docket No. 1). Therein, Plaintiff pled with specificity that the Defendants did not have probable cause to believe that she had committed or was committing a crime. (Docket No. 1 at ¶ 50). Specifically, Plaintiff alleges that the Defendants were well aware of the ongoing monetary dispute between her and Ziner, and that she had told Ziner only to proceed with the automobile repairs if they were covered by insurance. *Id* at ¶ 46. In addition, Plaintiff asserts the Defendants knew that Ziner proceeded to repair the automobile at his own risk, and that she never had any intent to deceive or threaten Ziner, or commit any criminal fraud upon him. *Id.* Moreover, Plaintiff notes that Rhoades acknowledged that Ziner had released the car to her. *Id.* at ¶¶ 31, 32. Accordingly, Plaintiff argues that the defendants knowingly and deliberately credited Ziner's false accusations, when they knew or should have known that the accusations were materially false.[5] *Id.* at ¶ 49.

---

[5] "A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit […] must prove that must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create

Moreover, in Plaintiff's estimation, the Defendants acted with malice toward her and recklessly and negligently failed to properly conduct an investigation of Ziner's accusations. *Id.* at ¶ 51. In addition, Plaintiff states that during her April 18, 2011 Preliminary Hearing, the Magistrate refused to hold the hearing because the dispute was a civil matter. *Id.* at ¶ 42. Instead, the Magistrate directed the parties to settle the matter civilly. *Id.*

Considering the standard of review on a Motion to Dismiss, the Plaintiffs' allegations are therefore sufficient to permit the case to move beyond the current Motion to Dismiss and into the discovery stage, as there exists a question of fact, regarding the existence of probable cause for Plaintiff's arrest. In making this determination, the Court is mindful that the Supreme Court has "'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 816 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991) (*per curiam*)). However, the Third Circuit Court of Appeals has recognized that the "existence of disputed, historical facts material to the objective reasonableness of an officer's conduct will give rise to a jury issue." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) (citing *Sharrar v. Felsing*, 128 F.3d 810, 828 (3d Cir. 1997); *Karnes v. Skrutski*, 62 F.3d 485, 499 (3d Cir. 1995)).

IV.  Conclusion:

Based on the foregoing, Plaintiff has sufficiently pled claims for false arrest and malicious prosecution, to permit these allegations to be probed in discovery. Accordingly, the Court enters the following Order on this 4th day of May, 2012:

---

a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause." *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)(citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

**ORDER**

IT IS HEREBY ORDERED that all of Plaintiff's claims against Defendant Indiana Borough Police Department are dismissed, with prejudice, given Plaintiff's counsel's agreement to same during the April 26, 2012 Oral Argument;

IT IS FURTHER ORDERED that Defendants Indiana Borough, Officer Michael Rhoades, Chief William Sutton and Officer Wesley Hite's argument relating to spoliation is DENIED, without prejudice, given Defense counsel's withdrawal of same during the April 26, 2012 Oral Argument; and

IT IS FURTHER ORDERED that Defendants Indiana Borough, Officer Michael Rhoades, Chief William Sutton and Officer Wesley Hite's Motion [6] is DENIED without prejudice to the arguments raised therein, which this Court finds should be more properly raised at the close of discovery.[6] Hence, Defendants Indiana Borough, Officer Michael Rhoades, Chief William Sutton and Officer Wesley Hite shall file an Answer to the Complaint on or before May 29, 2012. The Court shall thereafter schedule a Case Management Conference.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: May 4, 2012
cc/ecf: All Counsel of Record

---

[6] *See, Free Speech Coalition v. Attorney General of U.S.*, No. 10-4085, 2012 WL 1255056 (3d Cir. Apr. 16, 2012) (vacating a District Court's dismissal of certain claims in a Complaint where the plaintiffs should have been permitted the opportunity to conduct discovery and develop the record as to those claims.).