IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLISON A. MCCOY-JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-152 |
| | ) Judge Nora Barry Fischer |
| INDIANA BOROUGH, OFFICER MICHAEL RHOADES, CHIEF WILLIAM C. SUTTON, OFFICER WESLEY HITE, and MICHAEL ZINER t/d/b/a IMPORT AUTO WORKS, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

I.   INTRODUCTION

   This is a Section 1983 action stemming from an alleged conspiracy among Defendants to initiate the criminal prosecution of Plaintiff Allison McCoy-Jones without probable cause in violation of her rights under the Fourth, Ninth and Fourteenth Amendments to the United States Constitution. (Docket No. 49). Plaintiff's claims include false arrest, malicious prosecution, and conspiracy, as well as state law claims for intentional infliction of emotional distress ("IIED"), malicious prosecution and defamation. (*Id.*). Plaintiff seeks compensatory and punitive damages. (*Id.*). Presently pending before this Court is Defendant Ziner's Partial Motion to Dismiss the Amended Complaint. (Docket No. 59). For the reasons outlined in the following Memorandum Opinion, the Motion is GRANTED, in part and DENIED, in part.

II.     FACTUAL BACKGROUND[1]

Plaintiff is the owner of a 2003 Nissan Murano automobile. (Docket No. 49 at ¶ 11). The car has been serviced by a Nissan dealership and by Defendant Michael Ziner ("Ziner"), a mechanic who operates "Import Auto Works." (*Id*. at ¶¶ 11-14). On March 2, 2010, the car suffered a mechanical problem, and Plaintiff requested that Ziner diagnose the issue. (*Id*. at ¶¶ 15-16). Ziner determined that the transmission failed and that repair costs would total $7,000.00 to $8,500.00. (*Id*. at ¶ 16). Frustrated with the car's repair history, Plaintiff asked Ziner to call Nissan to determine whether the transmission was covered under a Nissan recall program, as Plaintiff did not want to invest any more money in the car. (*Id*.). Since Plaintiff's car had been in a 2008 car accident, which may have contributed to the transmission problem, Ziner also advised Plaintiff that he would call the insurance carrier of the driver who was at fault for the 2008 accident. (*Id*.). Over the next several weeks, Plaintiff and Ziner pursued various methods through which the repairs might be covered by either a Nissan warranty or the insurance coverage applicable to the 2008 accident. (*Id.* at ¶¶ 17-18). Neither Nissan nor any auto insurance carrier would agree to pay for the repairs. (*Id*.). As a result, Plaintiff appealed the insurer's denial to the Pennsylvania Insurance Commission and informed Ziner that he was not to repair the car unless the repair costs were to be covered by a third-party. (*Id*.).

On March 26, 2010, Ziner informed Plaintiff that her car had been repaired, stating that he had "found a cheaper way to get it on the road." (*Id.* at ¶ 19). Per Ziner's permission and instruction, Plaintiff retrieved her car from his lot on March 27, 2010, with the mutual understanding that they "would square up the paperwork" two days later. (*Id*.). However, after Plaintiff retrieved her car, a dispute ensued between her and Ziner regarding his $3,600.00 bill.

---

[1] In evaluating a motion to dismiss, this Court must accept the Plaintiff's well-pleaded allegations as true and construe them in her favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009).

(*Id.* at ¶¶ 20; 23).  In turn, Plaintiff offered to pay Ziner $2,800.00 for the parts he installed, but he rejected her offer. (*Id.* at ¶ 24).  Plaintiff then invited Ziner to sue her for payment, which he declined. (*Id.* at ¶¶ 24; 30).  After August 2010, Plaintiff and Ziner had no further contact.  (*Id.* at ¶ 30).

Nearly ten months after Plaintiff retrieved her car from Ziner, on January 24, 2011, Plaintiff received a call from Defendant Officer Rhoades ("Rhoades") of the Indiana Borough Police Department. (*Id.* at ¶ 31).  Rhoades informed her that Ziner had filed a criminal complaint against her for her alleged failure to pay for the repairs. (*Id.*).  Plaintiff advised Rhoades about the history of the car's repairs and the monetary dispute which she had had with Ziner. (*Id.*).  Rhoades requested that she meet with him to discuss the matter, which she did the next day. (*Id.* at ¶¶ 31-32).  Rhoades again asked her what happened and she told him about the monetary dispute. (*Id.*).  She informed Rhoades that Ziner stated that an insurance carrier was going to pay for the repairs and that was why Ziner released the car to her. (*Id.*).  Rhoades acknowledged that Ziner had released the car to her. (*Id.*).  He then asked if she had ever received payment from an insurance carrier and/or Nissan for any of the work. (*Id.*).  Plaintiff stated that she had not, but if she had received any remuneration, it would have been given to Ziner. (*Id.*).  Rhoades advised Plaintiff that Ziner would need to sue Plaintiff and then Plaintiff would have to sue the insurance carrier, resulting in an expensive and time-consuming process. (*Id.*).  Plaintiff then told him that she had offered to pay Ziner for the cost of the parts, but that he had declined her offer. (*Id.*).

Thereafter, on January 31, 2011, Rhoades called Plaintiff and informed her that she had one week to pay Ziner in full or she would be arrested for theft of services. (*Id.* at ¶ 33).  He further told her that she was not permitted to contact Ziner and that no one else could contact Ziner on her behalf, or she would be arrested for harassment. (*Id.*).  Subsequently, on February 7,

2011, Rhoades called Plaintiff and stated that because she had not paid Ziner, she was going to be arrested. (*Id*. at ¶ 35). Plaintiff agreed to meet Rhoades at Magistrate Habrel's office the next day, February 8, 2011, at which time she was arrested and charged with theft of services, 18 Pa.C.S. § 3926[2] and fraudulent removal of a vehicle from a garage, 75 Pa.C.S. § 7116,[3] which are both third degree felonies. (*Id*.). Plaintiff was charged with unlawfully removing her car from Ziner's lot even though the Affidavit of Probable Cause signed by Rhoades stated that Ziner had released the car to her. (*Id.* at ¶ 37). Moreover, the Affidavit stated that Ziner had retained a key to her car, thus implying that she had not been authorized to retrieve it. (*Id*.). Plaintiff asserts that said allegation was absolutely false because Ziner placed the keys that she had given him under the floor mat so that she would have all of the keys when she retrieved her car. (*Id*.). Therefore, Plaintiff maintains that Rhoades and the Indiana Borough Police Department knew that Ziner had not retained any key. (*Id*. at ¶ 61).

Plaintiff further alleges that media reports concerning her false and unlawful arrest were published because of information disseminated by the Indiana Borough Police Department. (*Id.* at ¶ 40). In particular, on February 9, 2011, an article appeared in the Indiana Gazette reporting that Plaintiff had been charged with two felonies. (*Id.* at ¶ 38). The Pittsburgh Tribune Review

---

[2] 18 Pa. C.S. § 3926 provides that:

> (1) A person is guilty of theft if he intentionally obtains services for himself or for another which he knows are available only for compensation, by deception or threat […] or by false token or other trick or artifice to avoid payment for the service.
> […]
> (4) Where compensation for service is ordinarily paid immediately upon the rendering of such service, as in the case of hotels and restaurants, refusal to pay or absconding without payment or offer to pay gives rise to a presumption that the service was obtained by deception as to intention to pay.

18 Pa.C.S. § 3926 .

[3] 75 Pa. C.S. § 7116 provides that "no person shall remove or cause to be removed, by any false pretension or with intent to defraud, any vehicle that has been placed in a garage or automobile shop for storage, repair or garage service." 75 Pa. C.S. § 7116.

4

also published an article detailing her arrest and criminal charges. (*Id.* at ¶ 39). Plaintiff contends that these reports adversely affected her ability to work as an insurance broker. (*Id.* at ¶ 41).

Based on the foregoing, Plaintiff retained attorney Wendy L. Williams ("Williams")[4] to defend her against the felony charges. (*Id.* at ¶ 42). At the time and place set for Plaintiff's Preliminary Hearing, on April 18, 2011, Magistrate Haberl refused to hold the hearing because in his estimation the dispute was a civil matter. (*Id.* at ¶ 43). He then directed the parties to engage in settlement discussions, which they did, albeit unsuccessfully. (*Id.* at ¶¶ 43-44). Ziner refused to accept any agreement in which he was paid less than the full amount that he believed he was owed. (*Id.*). Moreover, he refused to consent to any agreement in which the charges against Plaintiff would be dismissed. (*Id.*). As a result, Williams produced documents that showed that the disputed vehicle parts were likely covered by warranty and that Ziner should have received reimbursement from the manufacturer. (*Id.* at ¶ 44). In addition, Williams produced three sets of car keys to prove to Rhoades and Assistant District Attorney ("ADA") Dougherty that the third set of keys that Ziner alleged to be in his possession were actually in Plaintiff's possession. (*Id.* at ¶ 45). Even in light of these representations, Ziner still refused to settle and in response, ADA Dougherty told Ziner to "take the $3,000 or you are on your own." (*Id.* at ¶ 46). Given same, Ziner agreed to accept $3,000.00 from Plaintiff and to return the key allegedly still in his possession. (*Id.* at ¶ 47). To that end, Ziner was immediately paid $500.00 and Plaintiff agreed to pay him the remaining balance by May 18, 2011. (*Id.*). The parties, however, did not reduce their agreement to writing. (*Id.*).

In order to pay the remaining balance, Plaintiff needed to sell several items from her tavern business. (*Id.* at ¶ 48). On May 16 and 17, 2011, she requested that Williams seek a

---

[4] Wendy L. Williams is a solo practitioner. She received her law degree from Duquesne University in 1987.

continuance until she could sell these items. (*Id.*). Williams refused to request a continuance and refused to attend the May 18, 2011 Preliminary Hearing. (*Id.*). Plaintiff asserts that Williams abandoned her. (*Id.*). As a result, Plaintiff attended the Preliminary Hearing without the assistance of counsel and asked Magistrate Haberl for a continuance, which he denied. (*Id.* at ¶ 49). Instead, he asked Plaintiff to sign a waiver of the Preliminary Hearing, which she refused. (*Id.*). Magistrate Haberl then insisted that she sign it, explaining that the verbal settlement agreement would remain in place, so long as she was not formally arraigned in the Court of Common Pleas. (*Id.*). Accordingly, Plaintiff signed the form, waiving her right to a Preliminary Hearing. (*Id.*).

Plaintiff and Williams had previously agreed that Plaintiff would submit the remaining monetary balance to Williams and then Williams would make the settlement payment to Ziner. (*Id.* at ¶ 50). In accordance with this plan, once Plaintiff sold the necessary items to raise the money, she delivered the funds to Williams on June 9, 2011, so that she could submit them to Ziner. (*Id.*). On July 1, 2011, Plaintiff went to the Indiana County Court House to initiate expungement proceedings with the understanding that the entire matter had been settled and dismissed. (*Id.* at ¶ 51). At that time, the District Attorney's Office stated that no funds had been received by Ziner and that Plaintiff was scheduled for formal arraignment on August 4, 2011. (*Id.*). Plaintiff then emailed Williams, demanding that the funds be forwarded to Ziner as soon as possible so that she would be in compliance with the settlement agreement. (*Id.*). Williams refused to further represent Plaintiff, returned the money and gave her case file to Plaintiff. (*Id.* at ¶ 52). Upon receipt of the settlement funds from Williams, Plaintiff attempted to pay the agreed upon amount of $3,000.00 to the Clerk of Court. (*Id.* at ¶¶ 54-55). The Clerk of Court, however, refused to accept any amount other than Ziner's $3,600.00 demand. (*Id.* at ¶ 55).

Given these circumstances, Plaintiff proceeded to speak with ADA Dougherty, who advised her to pay the agreed upon $3,000.00 and stated that he would "take care of" the dismissal and expungement once the funds had been paid. (*Id.*). Accordingly, on July 22, 2011, Plaintiff paid $3,000.00 to the Clerk of Court.[5] (*Id.* at ¶ 56). The Clerk of Court gave her a receipt, which indicated "Possible Rule 586 Settlement," and instructed her to take the receipt to the District Attorney's Office. (*Id.*). Although she was not familiar with Rule 586, Plaintiff relied on ADA Dougherty's recommendation and signed the Rule 586 forms, doing "whatever ADA Dougherty instructed her to do in order to have the charges dismissed." (*Id.* at ¶¶ 56; 57). Later that same day, she received a call stating that she was required to pay $174.00 in court costs before her Rule 586 forms could be processed. (*Id.* at ¶ 56). Plaintiff paid the court costs on July 25, 2011 and submitted her payment receipt to the District Attorney's Office. (*Id.*). ADA Dougherty filed Plaintiff's Rule 586 forms with the Court of Common Pleas on July 26, 2011. (*Id.* at ¶ 57). The Order for Dismissal was signed on August 1, 2011 and filed with the Clerk of Court the following day. (*Id.*). Two days later, Plaintiff formally requested expungement forms from the Indiana County Clerk of Court. (*Id.*).

III.  RELEVANT PROCEDURAL HISTORY

Plaintiff moved for leave to file an Amended Complaint, (Docket No. 42), to which Ziner responded in opposition. (Docket No. 44). This Court granted Plaintiff leave to amend on June 21, 2012, and Plaintiff timely filed her Amended Complaint. (Docket No. 49). After Plaintiff filed her Amended Complaint, Ziner filed a Partial Motion to Dismiss Plaintiff's Amended Complaint along with his supporting brief. (Docket Nos. 59; 60). In turn, Plaintiff filed her Response and Brief in Opposition. (Docket Nos. 67; 68). Thereafter, Ziner filed his Reply Brief.

---

[5] Despite the fact that Plaintiff satisfied her obligation under the settlement agreement, Ziner never satisfied his obligation as he failed to return the key allegedly in his possession. (*Id.* at ¶ 60). Moreover, Ziner ultimately stated that he no longer had possession of the key because Magistrate Habrel instructed him to dispose of it. (*Id.*).

(Docket No. 73). Given same, Ziner's Motion, (Docket No. 59), is fully briefed, (Docket Nos. 60; 68), and ripe for disposition. The Court now turns to its discussion of the legal standard and its analysis.

IV.    LEGAL STANDARD

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of a complaint. The United States Supreme Court has held that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)) (alterations in original).

The Court must accept as true all well-pleaded facts and allegations and must draw all reasonable inferences therefrom in favor of the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009); *Twombly*, 550 U.S. at 555. As the Supreme Court made clear in *Twombly*, however, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Supreme Court has subsequently broadened the scope of this requirement, stating that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). "This 'plausibility' determination will be 'a context-specific task that requires

the reviewing court to draw on its judicial experience and common sense.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

After *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a district court must conduct the following analysis to determine the sufficiency of a complaint:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1947, 1950); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, 2012 WL 296904 (Apr. 2, 2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

*Twombly* and *Iqbal* have not changed the other pleading standards for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), and the requirements of FED. R. CIV. P. 8 must still be met. *See Burtch*, 662 F.3d at 220. Rule 8 requires a showing, rather than a blanket assertion, of entitlement to relief, and "contemplates the statement of circumstances, occurrences, and events in support of the claim presented and does not authorize a pleader's bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3 (internal alterations, citations, and quotations omitted). The Supreme Court has explained that a complaint need not be "a model of the careful drafter's art" or "pin plaintiffs' claim for relief to a precise legal theory" so long as it states "a plausible 'short and plain' statement of the plaintiff's claim." *Skinner v. Switzer*, --- U.S. ---, 131 S. Ct. 1289, 1296 (2011); *see also Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ---, 131 S. Ct. 1309, 1322 n.12 (2011) (emphasizing that "to survive a motion to dismiss,

respondents need only allege 'enough facts to state a claim to relief that is plausible on its face'") (quoting *Twombly*, 550 U.S. at 570)).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider "only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.,* 361 F.3d 217, 222 n. 3 (3d Cir. 2004). A document forms the basis of a claim if it is *"integral to or explicitly relied upon* in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999) (emphasis in original; internal citations and quotations omitted).

## V. ANALYSIS

### A. Doctrines of Res Judicata and Law of the Case

Plaintiff avers that her claims for IIED and malicious prosecution cannot be dismissed given this Court's May 4, 2012 Memorandum Order and the application of the doctrines of *res judicata* and law of the case. (Docket No. 68 at 4; 11). The doctrine of *res judicata* precludes reconsideration of the same claim when there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privities, and (3) a subsequent suit based on the same cause of action." *Corestates Bank, N.A. v. Huls Am., Inc.,* 176 F.3d 187, 194 (3d Cir. 1999); *see also Moore v. DiGuglielmo*, No. 09-2189, 2012 WL 2928059, at *6 (3d Cir. July 19, 2012). For the doctrine of *res judicata* to apply, there must have been a final judgment on the merits in a prior suit. As this is Plaintiff's first suit claiming these causes of action against the Defendants, there has not been any final judgment[6] on the merits in a prior suit, and thus the doctrine of *res judicata* has no preclusive effect.

---

[6] A final judgment is a "decision by the district court that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *eds Adjusters, Inc. v. Computer Scis. Corp.*, 149 F.R.D. 86, 88 (E.D. Pa. 1993) (citing *Lauro Lines, S.R.L. v. Chasser,* 490 U.S. 495, 497 (1989)).

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States v. Hasan*, 468 F. App'x 96, 98 (3d Cir. 2012) (quoting *Farina v. Nokia, Inc.,* 625 F.3d 97, 117 n. 21 (3d Cir. 2010)) (internal quotation marks omitted).

> Although it does not limit the power of trial judges for reconsidering issues previously decided by a predecessor judge from the same court or from a court of coordinate jurisdiction, it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of his predecessors in a given case.

*Fagan v. City of Vineland*, 22 F.3d 1283, 1290-91 (3d Cir. 1994).  Moreover, the law of the case doctrine operates only to limit reconsideration of the same issue, but does not preclude a trial judge from clarifying or correcting an earlier ambiguous ruling. *Id.* (citing *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979)).  However,

> because this is a rule of discretion rather than a limit on authority, it does not apply in extraordinary circumstances. These include situations in which: (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice.

*Schneyder v. Smith*, 653 F.3d 313, 331-32 (3d Cir. 2011) (quoting *Pub. Interest Research Grp. v. Magnesium Elektron,* 123 F.3d 111, 116 (3d Cir. 1997)) (internal quotation marks omitted).

Defendant Indiana Borough and its Officers moved to dismiss Plaintiff's Complaint including her claims of intentional infliction of emotional distress and malicious prosecution. (Docket No. 6).  During Oral Argument on same, both counsel and the Court agreed that the central issue in determining the motion was whether Defendant Indiana Borough and its Officers had probable cause to arrest Plaintiff. (Docket No. 31).  Therefore, in its May 4, 2012 Memorandum Order, the Court focused its discussion on the issue of probable cause as it related

to the claims of false arrest and malicious prosecution against Defendant Indiana Borough and its Officers. (Docket No. 31). To that end, the Court did not analyze the favorable termination element of the malicious prosecution claim and did not address the IIED claim. (*Id.*). In addition, in support of his Motion to Dismiss the malicious prosecution claim, Ziner has presented the Petition for Settlement of Prosecution Under Pennsylvania Rules of Criminal Procedure Rule No. 586, (Docket No. 59-2), that the Court did not have when it issued its Memorandum Order. Therefore, the law of the case doctrine does not preclude this Court from considering the issues raised in Ziner's Motion, as the Court has before it new evidence not previously made part of the record. *See Fagan*, 22 F.3d at 1290-91.

B. *Intentional Infliction of Emotional Distress*

Ziner argues that Plaintiff's claim for IIED should be dismissed because the allegations in the Amended Complaint fail to establish the requisite extreme and outrageous conduct necessary to support such a claim. (Docket No. 59 ¶ 6). In response, Plaintiff asserts that this claim should not be dismissed because her allegations establish Ziner's extreme and outrageous conduct and discovery will further aid in developing the facts to support such claim. (Docket No. 68 at 5-6).

To establish a claim for IIED, Plaintiff must prove that (1) Ziner's conduct was intentional or reckless; (2) that his conduct was extreme and outrageous; (3) his conduct caused emotional distress; and (4) the result in emotional distress was severe. *Bootay v. KBR, Inc.*, 437 F. App'x 140, 146 (3d Cir. 2011); *Dull v. Westmanchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 754-56 (M.D. Pa. 2009). Moreover, Ziner's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Quinn v. Dietman*, 413 F. App'x 419, 422 (3d Cir. 2011) (quoting *Hoy v. Angelone,* 720 A.2d 745, 754 (Pa. 1998)).

Plaintiff contends that the following events constitute extreme and outrageous conduct. Ziner initiated and cooperated in the fabrication of false felony charges against Plaintiff, despite the fact that evidence and probable cause for same was lacking. (Docket No. 68 at 5). Ziner then caused Rhoades to threaten Plaintiff with conviction and incarceration unless she paid Ziner the disputed money. (*Id*.). In addition, Ziner communicated these false felony charges to the Indiana Borough community and local media outlets, including the Indiana Gazette and the Pittsburgh Tribune Review. (*Id*. at 6).

The initial determination of whether Ziner's actions constitute extreme and outrageous conduct is to be made by the Court. *Gleeson v. Robson*, No. 02-1747, 2005 WL 1210948, at *30 (M.D. Pa. May 6, 2005). However, "where reasonable persons may differ, it is for the jury to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability." *Id.* at *30 (quoting *Motheral v. Burkhart,* 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990)). To that end, courts vary regarding whether the initiation of a criminal prosecution without probable cause constitutes the extreme and outrageous conduct necessary to support a claim for IIED.

For instance, some courts have determined that the initiation of a criminal prosecution without probable cause does not constitute extreme and outrageous conduct. *See, e.g. Griffin v. Mun. of Kingston*, No. 08-2290, 2009 WL 1794775, at *11 (M.D. Pa. June 23, 2009) (quoting *U.S. ex rel. Magid v. Wilderman,* No. 96-4346, 2005 WL 469590, at *5 (E.D. Pa. Feb. 28, 2005)) (stating that "outside of the employment context, the filing of false charges and false arrest are generally not found so extreme and outrageous as to permit recovery on an IIED claim. Even if false, '[m]ere allegations of criminal conduct are insufficient to establish that a person acted in an extreme or outrageous manner.'"); *Simmons v. Poltrone,* No. 96-8659, 1997 WL 805093, at *4-5 (E.D. Pa. Dec. 17, 1997) (finding conduct was not outrageous when defendants conspired to

have plaintiff falsely arrested and charged for burglary); *Mastromatteo v. Simock,* 866 F. Supp. 853, 859 (E.D. Pa. 1994) (holding that allegations that a police officer manufactured facts to support probable cause for an arrest warrant resulting in detention of plaintiff did not state an IIED claim). Alternatively, other courts have determined that the initiation of a criminal prosecution without probable cause constitutes extreme and outrageous conduct. *See, e.g. Watson v. Haverford Twp. Police Dep't*, No. 10-6731, 2011 WL 2200306, at *5 (E.D. Pa. June 6, 2011) (refusing to dismiss an IIED claim where a defendant used his influence with police to cause the plaintiff to be falsely arrested in retaliation for a history of discord between neighbors); *Watson v. Abington Twp.*, No. 01-5501, 2002 WL 32351171, at *9 (E.D. Pa. Aug. 15, 2002) (denying dismissal of an IIED claim where defendant police officers falsely arrested one plaintiff, drove another out of business and arrested and seized items from a third plaintiff using a search warrant they knew to be false); *Gilbert v. Feld,* 788 F. Supp. 854, 862 (E.D. Pa. 1992) (holding that an IIED claim had been properly pled where defendants were alleged to have "procured the institution of criminal charges against [plaintiff] by providing false and misleading information to and by concealing information from" the district attorney's office).

Given such variation among courts, in *Gleeson*, the United States District Court for the Middle District of Pennsylvania determined that the question of whether the initiation of a criminal prosecution without probable cause constitutes extreme and outrageous conduct should be left to the jury. *Gleeson*, 2005 WL 1210948, at *30. Likewise, this Court follows the rationale of the United States District Court for the Middle District of Pennsylvania in *Gleeson* and finds that in order to properly determine whether Ziner's conduct is sufficiently extreme and outrageous a complete factual record must be developed. In evaluating a Motion to Dismiss, this Court must accept the Plaintiff's allegations as true and construe them in her favor. *See Iqbal*,

556 U.S. 662; *Twombly*, 550 U.S. at 555. As such, the Plaintiff's factual allegations are sufficient to permit her IIED claim to move beyond the current Motion to Dismiss and into the discovery stage, as there exists a question of fact, regarding the extreme and outrageous nature of Ziner's conduct. Hence, the Court denies Ziner's Motion to Dismiss Plaintiff's IIED claim, without prejudice, to it being raised anew, by way of a properly supported summary judgment motion, at the conclusion of discovery in this case.

*C. Malicious Prosecution*

Ziner moves to dismiss Plaintiff's malicious prosecution claim by asserting that she cannot show that the underlying criminal proceedings were terminated in her favor. (Docket No. 59 at ¶ 4). In response, Plaintiff maintains that this claim should survive because when considering the totality of the circumstances surrounding the termination of the criminal proceedings, it is clear that they were terminated in her favor. (Docket No. 68 at 13).

To prevail on a Pennsylvania common law action for malicious prosecution, Plaintiff must prove that (1) Ziner instituted proceedings without probable cause; (2) Ziner acted with malice; and (3) the proceedings were terminated in favor of Plaintiff.[7] *Mitchell v. Guzick*, 138 F. App'x 496, 499 (3d Cir. 2005) (citing *Hugee v. Pa. R.R. Co.*, 101 A.2d 740, 742 (Pa. 1954)). Ziner moves to dismiss Plaintiff's malicious prosecution claim on the ground that she cannot

---

[7] The standard for a Pennsylvania common law action for malicious prosecution is substantially similar to that for Fourth Amendment malicious prosecution in a Section 1983 action, because to prevail on Fourth Amendment malicious prosecution in a Section 1983 action, a plaintiff must likewise prove that:

> (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding.

*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

show that the underlying criminal proceedings were terminated in her favor. (Docket No. 60 at 13).

"A prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim." *Hilfirty v. Shipman*, 91 F.3d 573, 580 (3d Cir. 1996) (citing *Alianell v. Hoffman*, 176 A.2d 207 (Pa. 1935)). In particular,

> The Pennsylvania Supreme Court in [*Haefner v. Burkey*, 626 A.2d 519, 521 (Pa. 1993)] noted that 'if the Defendant is discharged after abandonment of the charges by the prosecutor, this is sufficient to satisfy the requisite element of prior favorable termination of the criminal action. 'However, if the prosecutor drops the charges as part of a compromise, the accused will fail the favorable termination prong.

*Taylor v. Winters*, 115 F. App'x 549, 552 (3d Cir. 2004) (citing *Hilfirty*, 91 F.3d at 579).

In deciding a Rule 12(b)(6) motion to dismiss, the Court may properly rely on public records of judicial proceedings, in addition to the allegations pled in the Amended Complaint. *Lum,* 361 F.3d at 222 n. 3; *O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d. Cir. 2009). The Petition for Settlement of Prosecution Under Pennsylvania Rules of Criminal Procedure Rule No. 586 is a matter of public record and Plaintiff has not objected to the Court's consideration of it. (Docket No. 59-2). This document demonstrates that Plaintiff obtained the termination of her prosecution pursuant to an agreement of compromise. (*Id.*). In particular, it reflects that the charges of theft of services and fraudulent removal of a vehicle were resolved because Plaintiff agreed to pay Ziner $3,000, as well as the costs of prosecution, in exchange for the discharge of the criminal charges brought against her. (*Id.*). As previously mentioned, "[a] termination is not sufficiently favorable to support a claim for malicious prosecution if 'the charge is withdrawn […] pursuant to an agreement of compromise with the accused.'" *Hilfirty*, 91 F.3d at 581.

16

Because Plaintiff obtained the termination of her prosecution pursuant to an agreement of compromise, her criminal proceedings did not terminate in her favor. *Id.*

Despite same, Plaintiff argues that pursuant to *Taylor v. Winters*, 115 F. App'x 549 (3d Cir. 2004), the Court must consider the totality of the circumstances surrounding the procedure used to terminate the criminal proceedings. (Docket No. 68 at 13). Plaintiff asserts that she never admitted wrongdoing and even pled not guilty. (*Id.*). In addition, because her criminal attorney allegedly abandoned her during the course of the criminal proceedings, she relied on the advice of the Assistant District Attorney and was never informed about the differences between termination pursuant to an agreement of compromise under Rule 586 and *nolle prosequi* termination pursuant to Rule 585.[8] (*Id.*).

The Court disagrees with Plaintiff's interpretation of *Taylor*.[9] In *Taylor*, the United States Court of Appeals for the Third Circuit held that the district court erred when it concluded on an ambiguous record that the misdemeanor charges, which were the basis for the plaintiff's malicious prosecution claim, were dismissed pursuant to a plea agreement. *Taylor*, 115 F.' Appx. at 552. There, the record was not clear as to whether the plaintiff pled guilty to a summary offense as part of an agreement pursuant to which more serious charges were dismissed. *Id.* at 551. As a result, the United States Court of Appeals for the Third Circuit reversed the district court's decision and found that there was a material dispute of fact as to whether the more serious charges were dropped as part of a compromise agreement under which the plaintiff pled guilty to the summary offense, or whether the charges were dropped due to the prosecutor's unilateral abandonment of the charges. *Id.* at 552.

---

[8] "Unlike a situation where the prosecution seeks a grant of *nolle prosequi* because of insufficient evidence, dismissal of charges as a result of a compromise is not an indication that the accused is actually innocent of the crimes charged." *Hilfirty*, 91 F.3d at 580.

[9] In addition, the Court has not found any support for Plaintiff's argument that the Court must consider the totality of the circumstances surrounding the procedure used to terminate the criminal proceedings.

The facts in the instant case are distinguishable from those in *Taylor*. Here, there is no parallel ambiguity in how the underlying criminal charges were resolved. The Petition for Settlement unambiguously demonstrates that Plaintiff obtained the termination of her prosecution pursuant to an agreement of compromise which "is not sufficiently favorable to support a malicious prosecution claim." *Hilfirty*, 91 F.3d at 581. Therefore, Plaintiff's claim of malicious prosecution must be dismissed, with prejudice.

## VI. CONCLUSION

Based on the foregoing, Defendant Ziner's Partial Motion to Dismiss Amended Complaint, (Docket No. [59]), is GRANTED, in part and DENIED, in part. An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

cc/ecf:     All counsel of record

Date:       August 24, 2012